IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED IN OPEN COURT
DATE: 7/16/14
TIME: ___
INITIALS: ___

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Criminal No: 2:14-cr-20178-SHM |
| JERRY W. DENNIS, | ) |
| Defendant. | ) |

## PLEA AGREEMENT

The following constitutes the Plea Agreement reached between the United States, represented by Edward L. Stanton III, United States Attorney for the Western District of Tennessee; Jeffrey H. Knox, Chief, Fraud Section, Criminal Division, U.S. Department of Justice; Frederick H. Godwin, Assistant U.S. Attorney; and Daniel P. Butler, Trial Attorney, Fraud Section (collectively "the United States" or "the Government"); and defendant Jerry W. Dennis ("Defendant"), represented by his attorney, Michael J. Stengel ("defense counsel" or "his attorney").

1. Defendant agrees that he will enter a voluntary plea of guilty to a one count Information charging him with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). The maximum punishment for this offense is as follows: imprisonment for not more than 20 years; a fine of not more than $500,000, or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer, whichever is greater; up to 5 years of supervised release; any lawful restitution and forfeiture; and a $100 special assessment.

2. Defendant has read the Information, discussed the charge and possible defenses with defense counsel, and understands the crime charged.

3. By voluntarily pleading guilty, Defendant knowingly waives and gives up his constitutional right to plead not guilty, to compel the Government to prove him guilty beyond a reasonable doubt, to not be compelled to incriminate himself, to confront and cross-examine the witnesses against him, to have a jury or judge determine his guilt on the evidence presented, and other constitutional rights which apply to a defendant on trial in a criminal case. Defendant also knowingly and voluntarily waives any right he might have to assert any legal challenge as to the venue and personal jurisdiction for this prosecution.

4. Defendant is pleading guilty to the charge described herein because he is guilty and because it is in his best interest to do so, and not because of any threats or promises. There have been no representations made whatsoever by any agent or employee of the United States to Defendant as to what the final disposition of this matter should or will be.

5. Defendant willingly stipulates that there is a sufficient factual basis to support each and every essential element of the offense set forth in the above-referenced Information to which he is pleading guilty. In support of Defendant's guilty plea, Defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of Defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both Defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

At all relevant times, Defendant' son, Jimmy W. Dennis, was an E-8, Sergeant First Class, in the United States Army. Jimmy Dennis was in Afghanistan in or about 2008 and 2009. Defendant did not know what assignment his son had in Afghanistan. Defendant talked to his

son about once a week.  In or about late 2008 or early 2009, Jimmy Dennis told Defendant that Jimmy Dennis would be sending some money home for Defendant to pay some of Jimmy Dennis' bills.  Defendant received one package which contained a toy "Jingle Truck."[1]  In the back compartment of the truck, Defendant found numerous small black bags which contained $100 bills.  Defendant did not know how much money was there and did not ask Jimmy Dennis from where it came.  Defendant took the money, wrapped it in aluminum foil, and put it in a freezer.

Defendant began to deposit the cash into his personal checking account.  Defendant made the cash deposits over several months in various amounts, usually about $2,000, $3,000, or $4,000 at a time to avoid suspicion at the bank.  Defendant did not recall the amount he deposited, but when shown a list detailing cash deposits into his account between in or about May 2008 and January 2009 which totaled $83,415, Defendant said the money deposited was the money Jimmy Dennis sent him.  At some point, the bank questioned Defendant about the cash deposits.  Defendant falsely told the person at the bank that he was selling some used cars.  As a result of the questions from the bank, Defendant stopped making these deposits.

At about that time, Jimmy Dennis called Defendant from Afghanistan and asked how much money was left from what Jimmy Dennis sent to Defendant.  Defendant told Jimmy Dennis there was about $20,000 left.  Jimmy Dennis told Defendant that James Pittman would be calling him.  Defendant knew Pittman as an Army buddy of Jimmy Dennis whom Defendant had met about three times.  They all rode motorcycles together once at a rally in Chattanooga, Tennessee.  At some point thereafter, Defendant received a call from Pittman and they discussed

---

[1] According to Wikipedia, the term "Jingle Truck" is U.S. military slang for a very distinctive, colorfully decorated truck or bus in Afghanistan and Pakistan. *See* http://en.wikipedia.org/wiki/Jingle_truck

a "loan" of the $20,000 to Pittman. According to Defendant, there were no terms or written agreement. They agreed, however, that Pittman would return the money in monthly installments.

Thereafter, Defendant received checks in the mail from Pittman's landscaping company. Defendant, however, never worked for that company and did not receive any tax documents such as a W-2.

In addition to the Jingle Truck, just prior to Jimmy Dennis' return to the U.S., Jimmy Dennis shipped a "Hope Chest" to Defendant's address which contained approximately $100,000 in cash hidden in a concealed compartment. Defendant simply stored the chest in his shed until Jimmy Dennis returned to the U.S., at which time Defendant returned the chest to Jimmy Dennis.

With the money Defendant received from Jimmy Dennis, Defendant paid off Jimmy Dennis' wife's car loan and Jimmy Dennis' motorcycle loan. Defendant identified a $10,000 payment to Chase Auto Finance as the car loan, and identified a $5,000 payment to Harley Davidson as the motorcycle loan.

Defendant also purchased a 2009 Harley Davidson motorcycle worth approximately $33,000 with the money he received from Jimmy Dennis. Defendant said Pittman provided a $5,000 deposit on the motorcycle. Defendant identified a series of money orders made out to Harley Davidson used to make payments on the motorcycle as money orders Defendant purchased with the cash he received from Jimmy Dennis.

6. Defendant understands that the matter of sentencing is within the sole discretion of the Court. Although Defendant has discussed sentencing with his attorney, Defendant understands that any discussions with defendant's attorney or anyone else regarding the United States Sentencing Guidelines ("U.S.S.G.") are merely rough estimates and the Court is not bound by those discussions. Defendant understands that the sentencing guidelines are advisory and are not

4

mandatory for sentencing purposes. Defendant understands the Court could impose the maximum term of imprisonment and fine allowed by law, including the imposition of supervised release. Understanding the provisions of the paragraph immediately above, the Government and Defendant agree to the following applicable U.S.S.G. considerations and factors.

| | | |
|---|---|---|
| § 2S1.1(a)(2) | Base Offense Level | 8 |
| § 2S1.1(a)(2) (using table in § 2B1.1(b)(1)(F)) | More than $120,000, not more than $200,000 | 10 |
| § 2S1.1(b)(2)(B) | Conviction under 18 U.S.C. § 1956 | 2 |
| Total offense level | | 20 |

7. Defendant understands that given the facts in the possession of the United States at the time of the writing of this agreement the United States does not oppose Defendant receiving full acceptance of responsibility credit pursuant to U.S.S.G § 3E1.1. Defendant understands that if the United States receives information between the signing of this agreement and the time of the sentencing that Defendant has previously engaged in, or if engaged in the future, in conduct inconsistent with the acceptance of responsibility, including, but not limited to, participation in any additional criminal activities between now and the time of sentencing, this position could change. Further, Defendant understands that whether or not acceptance of responsibility credit pursuant to Section 3E1.1 is granted is a matter to be determined by the Court. Failure of the Court to grant acceptance of responsibility credit is not a basis for Defendant to withdraw his guilty plea.

8. Under the calculations above, the resulting offense level would be 17. With a Criminal History Category of I, which the parties believe is applicable, the resulting sentence under the U.S.S.G. would be 24-30 months, and a fine range of $5,000 to $50,000. The United States will recommend a sentence at the low end of the U.S.S.G. range, whatever the range is determined to be by the District Court.

9. Defendant understands that any statement made in the course of the plea colloquy may be used against him in any criminal prosecution. Defendant knowingly, intelligently and voluntarily waives any objection based on Rule 410 of the Federal Rules of Evidence.

10. Defendant understands that 18 U.S.C. § 3742 gives him the right to appeal the sentence imposed by the Court. Acknowledging this, Defendant knowingly and voluntarily waives his right to appeal any sentence imposed by the Court and the manner in which the sentence is determined so long as the sentence is within or below the advisory sentencing guidelines range that the Court determines is appropriate under the U.S.S.G. This waiver is made in exchange for the concessions made by the United States in this Plea Agreement. The waiver in this paragraph does not apply to claims relating to prosecutorial misconduct or ineffective assistance of counsel.

11. Defendant understands that 28 U.S.C. § 2255 provides an additional method by which to challenge the sentence imposed by the Court. Acknowledging this, Defendant knowingly and voluntarily waives his right to file an action pursuant to Section 2255. The waiver in this paragraph does not apply to claims relating to prosecutorial misconduct or ineffective assistance of counsel.

12. Defendant understands that persons convicted of crimes are required to pay a mandatory assessment of $100 per felony count of conviction. Defendant agrees that payment of this assessment, in full, is a condition of this agreement and that such payment is due at the time of his sentencing.

13. Defendant agrees, if appropriate, to file accurate amended federal income tax returns with the United States Internal Revenue Service for calendar years 2008 and 2009.

14. Defendant agrees to, upon request, provide the United States Probation Office and the attorney for the United States complete and accurate personal financial statements and any and all other records and documents pertaining to Defendant's financial condition.

15. Defendant agrees, pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(a)(1), to forfeit and give to the United States prior to the date of sentencing any right, title, and interest which Defendant may have in assets constituting or derived from proceeds which he has that Defendant obtained directly or indirectly as a result of the violation to which he is pleading guilty and/or any property, real or personal, involved in the conspiracy to commit money laundering. Defendant further agrees not to contest the administrative, civil, or criminal forfeiture of any such asset(s). These assets include, but are not limited to, any assets charged in the Information filed by the United States. Defendant agrees that any asset charged in the Information is forfeitable as proceeds of the illegal activity for which he is pleading guilty. With respect to any asset which Defendant has agreed to forfeit, Defendant waives any constitutional and statutory challenges in any manner (including direct appeal, collateral challenges of any type, habeas corpus motions or petition, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution. Specifically, Defendant consents to the entry of a money judgment against him in the amount of $101,764 representing a sum of money constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the offense of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).

16. Defendant understands the Government will be free to fully describe the nature of the offense charged and the evidence in this case.

17. Defendant understands that a thorough presentence investigation will be conducted and sentencing recommendations independent of the United States will be made by the preparer of the presentence report, which the Court may adopt or take into consideration.

18. Defendant understands this agreement does not apply to any crimes that he may have committed (other than those specifically set forth herein), or that he may commit hereafter, including perjury. Should it be judged by the Government that Defendant has committed or attempted to commit any additional crimes or has engaged in any conduct constituting obstruction or impeding justice within the meaning of U.S.S.G. § 3C1.1 from the date of signing this plea agreement to the date of sentencing, or if Defendant attempts to withdraw his plea, Defendant understands the Government will be released from its obligations and would become free to argue for any sentence within the statutory limits. Defendant further understands that such a breach by him would not release him from the plea of guilty.

19. Defendant understands that this agreement is limited to the United States Attorney's Offices for the Western and Eastern Districts of Tennessee and the Fraud Section, Criminal Division, U.S. Department of Justice and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority.

20. Defendant understands that this Plea Agreement constitutes the entire agreement between him and the United States. Defendant has not been coerced, threatened, or promised anything other than the terms of this plea agreement, in exchange for his plea of guilty. Defendant understands that his attorney will have the opportunity to speak on his behalf and Defendant will also have an opportunity to personally address the Court and present any information to mitigate his sentence prior to sentencing being imposed.

21. Defendant has read or had the foregoing Plea Agreement read to him in a language he understands and has discussed the terms of this Plea Agreement with his attorney, Michael J. Stengel, and is satisfied with his attorney's advice and counsel. Being aware of all of the possible consequences of his plea, Defendant has independently decided to enter this plea of his own free will, and is affirming this agreement on the date and by his signature below.

EDWARD L. STANTON III
United States Attorney

JEFFREY H. KNOX
Chief, Fraud Section, Criminal Division
U.S. Department of Justice

7/16/14
Date

By: _____
Frederick H. Godwin
Assistant United States Attorney

7-16-14
Date

By: _____
Daniel P. Butler
Trial Attorney, Fraud Section

7-16-14
Date

By: _____
Jerry W. Dennis
Defendant

July 16 '14
Date

By: _____
Michael J. Stengel
Attorney for Defendant

9